**TEXAS CO. v. BURKETT. (No. 1446.)\***

(Court of Civil Appeals of Texas. El Paso.
Oct. 25, 1923. Rehearing Denied
Nov. 22, 1923.)

**1. Evidence ⬤⟿171—Parol proof of ownership of land admissible, where only a collateral fact.**

In action to recover agreed price for the privilege of using water impounded on plaintiff's land, in which the plaintiff's ownership of the land was not in dispute, the court did not err in permitting plaintiff to state orally that he owned the land, since the ownership of the land was only a collateral fact.

**2. Frauds, statute of ⬤⟿44(4)—Oral option for extension of contract, granting right to use water, and oral exercise thereof, held not in violation of statute.**

Oral agreement between owner of land and a company to which he had granted in writing the privilege of using water impounded on the land for one year, giving the company the option to extend the contract for another year, and oral exercise of the option within the year covered by the written contract, *held* not in violation of Vernon's Sayles' Ann. Civ. St. 1914, and Vernon's Ann. Civ. St. Supp. 1918, arts. 3965–3973; being a lease of land for a term not exceeding one year, and not a grant or sale of water or water privileges.

**3. Waters and water courses ⬤⟿40—Owner of patented land held to own water impounded on land by dam.**

Under Vernon's Sayles' Ann. Civ. St. 1914, and Vernon's Ann. Civ. St. Supp. 1918, arts. 4991 to 5107—117, owner of land patented in 1885 owned the underground water and the water impounded thereon by a dam in a stream, regardless of the question of riparian ownership, and regardless of any want of appropriation under the statute, since the state parted with the title to the land and the ownership and right to the use of the water incident thereto when it issued a patent.

**4. Waters and water courses ⬤⟿158(1)—Contract granting right to use water impounded on owner's land held not against public policy.**

Contract whereby owner of land granted to another the right to use underground water and water impounded on his land by a dam for mining purposes on land, not contiguous to or bordering on the stream, *held* not against public policy.

**5. Evidence ⬤⟿445(3)—Parol option for extension of written contract held not inconsistent with written contract.**

Oral agreement between owner of land and a company to which owner had granted in writing the right to use water impounded on his land for a period of a year, giving such company the option to extend the contract for another year, is not inconsistent with the written contract, and does not negative or add to or take from the written contract any of the provisions thereof.

**6. Evidence ⬤⟿271(1), 317(4)—Testimony as to statements as to agreement with third party held not objectionable as hearsay and self-serving.**

In an action for the agreed consideration for the privilege of using water impounded on plaintiff's land, in which plaintiff claimed that he could have leased the water to third party if defendant had not agreed to take it for another year, and defendant pleaded plaintiff's duty to minimize the damages, testimony as to plaintiff's statements to third party that he could not enter into a contract with him because of his agreement with defendant *held* admissible, as against the objection that it was hearsay and self-serving.

**7. Evidence ⬤⟿155(5)—Plaintiff properly permitted to give rebuttal testimony as to immaterial matter as to which defendants had testified.**

In an action for the consideration for the privilege of using water impounded on plaintiff's land, in which the defendant's witnesses had testified that plaintiff had stated that there was a spring on the land, and that the witnesses had seen no evidence thereof, plaintiff was properly permitted to testify, on rebuttal, with reference to the spring and water therefrom, even though the testimony was immaterial.

**8. Trial ⬤⟿29(2)—Remark of court on objection to testimony stating his understanding of plaintiff's contention held not ground for reversal.**

In action involving the question whether defendant was given the option by parol to extend a written contract, and whether defendant had exercised such option, remark of court on defendant's objection to testimony that "it was all embodied in one contract and was to be exercised later," *held* not ground for reversal; being merely the court's statement as to his understanding of the plaintiff's contention and not a comment on the weight of the evidence.

**9. Principal and agent ⬤⟿101(1)—Agent who had authority to make contract had apparent authority to extend term for another year.**

Mining company's agent, who had authority to enter into a contract for the use of water impounded on certain land by dam thereon, had apparent authority to enter into a parol contract with the owner, giving the company the option within the term of the written contract to extend the contract for another year.

**10. Appeal and error ⬤⟿1067—Refusal to instruct jury that, in event of its failure to agree, it had a right to report such failure to court, held not error.**

It was not reversible error to refuse a special charge instructing the jury that, in the event of its failure to agree on any issue submitted to them, they had a right to report such failure to the court.

Appeal from District Court, Eastland County; Geo. L. Davenport, Judge.

Suit by Joe Burkett against the Texas Company. Judgment for plaintiff, and defendant appeals. Affirmed.

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
\*Writ of error granted January 16, 1924.

H. S. Garrett, of Fort Worth, for appellant.

Conner & McRae and Burkett, Orr & McCarty, all of Eastland, for appellee.

WALTHALL, J. Joe Burkett brought this suit against the Texas Company, to recover the sum of $5,000 and interest, alleged to be due him as the agreed consideration for the right and privilege to use certain waters for well drilling purposes, impounded upon his land by the construction of a dam on his land in the bed of Leon River, and the right and privilege of pumping water from the underground or spring waters on and under said lands; said right and privilege extending for one year from and after September 24, 1920. He alleged that on September 24, 1919, the Texas Company, acting by and through its agent, J. A. Rees, by a written contract, bought of him the privilege of using said waters for a term of one year next thereafter, at the agreed consideration of $5,000 for said year, and paid said consideration; that at the time of the execution of the written lease contract it was verbally agreed and understood between him and the said Rees, acting for said company, that said company should have the option and right, at or before the expiration of said one-year term, to extend the same water privilege for another year for a similar consideration; that in June, 1920, on inquiry by him of said Rees whether or not the Texas Company desired to exercise its option and contract for said water for another year, said Rees said to him (plaintiff) that said company was desirous of using said water for another year, and that he (plaintiff) need not look any further toward selling said water and to consider the contract closed, which he did, and so informed defendant, and asked for an advancement of a part of the consideration, and was referred to McGinnis, the one having in charge the giving of checks for such matters; that not having seen said party and receiving said check he again called on Rees and asked him whether or not the Texas Company desired said water privileges for another year, and said Rees again informed him that the Texas Company did desire to exercise its option, and considered the contract closed for the use of the water for the second year; and that he (plaintiff) then and there agreed with Rees, agent of the Texas Company, that the company should have the use of the water for another year at the price of $5,000 for the year. Plaintiff alleges that about the middle of September, 1920, the Texas Company notified him that it did not desire to use the water for the second year, and that in answer thereto he immediately notified the company of its contract, and that the water was there, ready for its use at any time.

The Texas Company answered by general and several special exceptions, general denial; alleged that on the 24th day of September, 1919, plaintiff did, by means of a written deed, attempt to sell to it the said waters, which deed expired by its terms September 24, 1920, and that on August 16, and on August 20, 1920, it gave plaintiff notice that the contract would expire as above, and denied that it ever attempted to make a contract for the use of the water other than the written contract; denied plaintiff's right to sell to it the said water for commercial uses on nonriparian lands; that the alleged oral option and contract sued upon were unlawful, contrary to public policy, wanting in mutuality, without consideration, unenforceable; that the said water was the property of the state and not subject to private contract as alleged; that if plaintiff owned the water or a right therein such right constituted real estate or interest in land, and that by reason of the statute of frauds plaintiff could not maintain the suit or recover; denied that Rees had authority to make such optional agreement or contract for defendant and that it declined to be bound thereby.

We think the above sufficiently states the points at issue.

On special issues submitted the jury found:

(1) At the time the parties entered into the written lease contract for the use of the water, Joe Burkett, for himself and the company, through its representative, did agree that the company should have an option or right to extend such rights and privileges for a second year beginning September 24, 1920.

(2) For the second year's privileges and option to extend the privileges granted in the written contract, the company paid Burkett the sum of $5,000.

(3) The Texas Company, through its representative, J. A. Rees, prior to the expiration of the written contract exercised its option to extend the term of the written contract and agreed to pay Burkett therefor the sum of $5,000.

(4) It was within the authority or scope of the apparent authority of Rees to exercise the option to extend the term of the written contract for the second year.

The court further recited in the judgment that it further appeared from the undisputed testimony that the $5,000 for the second year had not been paid, and that the terms of the contract had been broken by defendant, and that plaintiff ought to recover. Judgment was rendered for plaintiff for $5,000 and interest from September 24, 1920, from which judgment this appeal is prosecuted.

[1] Appellee's ownership of the land upon which the right to the use of the waters thereon is involved not being in dispute, and being only a collateral fact and only collaterally at issue, the court was not in error in permitting plaintiff to state orally that he owned the land described in the contract and

in his petition, as complained of in the first proposition. Bexar County v. Terrell (Tex. Sup.) 14 S. W. 62.

While appellee was testifying and after he had identified the written contract for the use of the water for the previous year, and it had been put in evidence, he was permitted to state what J. A. Rees, who executed the written contract on the part of the appellant, said at the time the written contract was made with reference to a renewal of the contract for one more year, to the effect, in substance, that he wanted the refusal of it for another year if they needed it, and that, unless they had the right to renew the contract at the end of the year at the same price they would not take it at that time, and his reasons given, and that the witness then agreed with Rees that they might have the refusal of it for another year for the same consideration. Also over the same objections appellee was permitted to detail the conversation between himself and Rees on the two occasions of the alleged acceptance and renewal of the option in 1920, the substance of which is above set out. The admission of the testimony is complained of by the second proposition, as engrafting a parol condition upon a written contract, and to alter, vary, and amend the writing by parol, and to convey real estate or an interest in real estate by parol. The written contract did not contain the optional agreement. Appellant exercised the rights and privileges given in the written contract. We need not set out the written contract at length. It provided that appellee, for the consideration of $5,000 paid, grants to appellant the exclusive right and privilege to take all the water in the Leon river upon the land described, subject to the reservations stated. The term was for one year from its date. It gave the right to provide needed equipment and lay pipe lines and remove and pump water, and "may pump from said Leon river all said water and all that may be impounded in said Leon river upon the above-described premises" during the term of the grant, and "remove water from the river at any place it deems proper, and also the right, should it become necessary, to excavate on the banks of said river for the purpose of getting access to any underground streams." It gave the right of ingress and egress for all purposes, and warranted possession in appellant for the term. The contract is signed by appellee, and by the Texas Company by Rees.

[2] We have concluded that the admission of the parol evidence was not error on any of the grounds stated. The evidence shows that the land in controversy is a part of a section of land patented to the Houston & Texas Central Railway Company in 1885, and owned by Burkett at the time of the alleged agreement.

Conceding that, in a sense, the water in the Leon river on appellee's land is land, the statute permits a parol lease of land for any term not exceeding one year. If appellant, at the time of entering into the written lease contract, verbally agreed and reserved to itself the option to extend the right to the use of the water for another year from the expiration of the term of the written lease, and before the expiration of the term of the written lease exercised its option and by oral agreement extended the rights and privileges expressed in the lease for the one year, such agreement and extension of time would not be a violation of our Statute of Frauds and Fraudulent Conveyances. Heisch v. Adams, 81 Tex. 94, 16 S. W. 790.

We do not concur in the view expressed by appellant in its brief that the written contract, or the contemporaneous oral agreement, evidences a grant or sale of water or water privileges, as distinguished from a temporary leasing or right or use of the water. Both the written contract and the oral agreement as alleged indicate a temporary right to use the water for the stated and fixed term of one year.

[3] Title 73 of our statute on "irrigation and other water rights," and the several articles under said title applying to the right of and use of water in the streams of this state, in so far as they refer to the ownership or right of use of the waters therein, have no application to the facts of this case, but were intended to operate only on such interests as were in the state by reason of its ownership of lands bordering on rivers or natural streams. The only point we intend to make, in our reference to the above articles of the statute and the case referred to, is that appellee owned the underground waters on the land in question and the waters impounded thereon, and the waters that might become impounded thereon in the bed of the stream on his land, by his dam, by reason of his ownership of the land, and regardless of the question of riparian ownership of the water in the stream, and regardless of any want of appropriation under the statute; the state having parted with the title to the land and the ownership and right to the use of the water incident thereto in 1885.

[4, 5] We think it would not be contrary to public policy, as insisted by appellant, for appellee to grant the right of use of the underground waters on his land, or the impounded waters, for mining purposes, whether used on his lands or on lands not contiguous to or bordering on the stream, and as applying to the proposition that the grant of such use is against public policy. The relative rights of landowners to the use of the water for any purpose, nor the right of the state to the water, whether impounded or underground, is not before us nor involved in the controversy, only so far as the right

of use of the water and to contract ·with reference thereto might be against public policy. The oral agreement, ·we think, is not inconsistent with the written contract, but is entirely consistent with it. The parol does not negative the written nor does it either add to or take from the other anything provided in either, but together present the result of the transactions for each of the two years. Coverdill et al. v. Seymour, 94 Tex. 1, 57 S. W. 37; Martin v. Hemphill (Tex. Com. App.) 237 S. W. 550, 20 A. L. R. 984; Cox v. Bray, 28 Tex. 247.

[6] By the third proposition appellant claims as¦reversible error the admission in evidence over the objection as hearsay and self-serving, the question and answer by H. A. Johnson, agent of the Magnolia Petroleum Company, as follows:

"State whether or not you approached the same Joe Burkett along in June, 1920, and asked him with reference to the possibility of securing water, or a right to enter his place and pump water for use for drilling operations for your company."

To which the witness answered, "I did," and stated in further answer that Burkett refused to sell him the right and his reasons for refusing, to the effect that the water was contracted for·by the appellant company, and that the contract for the water would expire in a short time, and that, if the contract was not renewed, he would negotiate with the witness for the water; that the witness Burkett and Johnson conversed the second time with reference to the matter, at which time Burkett refused to negotiate for the water, stating as his reason that appellant wished to renew or extend its contract, all of which conversations were admitted in evidence. Burkett had testified substantially to the same facts as having occurred in his conversation with Rees when he approached Rees on the matter of the renewal of the lease for the second year.

Appellant elicited certain answers of Johnson by cross-deposition, which were offered in evidence, in which he testified that he had called on Burkett on two occasions ·in the spring of 1920, at Eastland, to see if a supply of water could be secured from him in his effort to arrange for an additional supply for mining purposes for his company, but did not arrange with Burkett to take the water, as Burkett was not in shape to let his company have it.

Appellee pleaded that he had an opportunity to lease the water to the Magnolia people, and would have done so had it not been for appellant agreeing to take the water for another year. Appellant denied the alleged· oral option and its refusal to comply with it, and further alleged that, in the exercise of care and duty, enjoined upon appellee by' law, appellee, without· unreasonable trouble or expense, might have sold said water to

other parties and thus have avoided his alleged damages, and that he cannot recover the damages which he could have so avoided. Rees testified that in one of the conversations Burkett told him of having an opportunity to sell the water right to the Magnolia Petroleum Company. We concur with appellee in his contention that the evidence of Burkett and Johnson complained of was competent by reason of the issues tendered' by the pleading, appellee asserting an effort to lease the water privilege to others, and could not do so for reasons stated and communicated to appellant, and appellant pleading a duty to lease the water and save the damages, and as part of the res gestæ of the alleged oral option, pleaded and specifically denied, the matters pleaded having occurred pending the alleged negotiation for the option for the second year.

In Goldman v. Blum, 58 Tex. 630, it was held that what was said and done by the parties while the business was being arranged, and the transaction pending, is admissible in evidence as part of the res gestæ. It seems to us that the evidence would be admitted as original testimony, and would not be self-serving or hearsay.

[7] Witnesses Rees and Crispen testified that during the negotiations for the written lease Burkett showed them an alleged spring, ·or what he claimed to be a spring, some 100 yards below the dam, and stated that there existed a spring there which had furnished water for stock during dry seasons in years gone by. They saw no evidence of a spring, just a little water in the creek. They made no investigation as to the existence of the spring. On rebuttal Burkett was permitted to testify with reference to· the spring and the well, the supply of water it had furnished for stock, and that the water in the bed of the creek came from that spring; that the well was there and filled up.. He further said:

"I told them that this well and spring was on north of the north line of the 80-acre tract. It was about 300 feet over on the George Haig survey, and gave them the privilege of coming down there and using water there if necessary."

Appellant requested that all of the testimony of Burkett with reference to the spring be stricken out, on the ground that the well was on a different tract of land, and there was no pleading to justify the evidence. Appellant submitted a special charge instructing· the jury "that plaintiff could not sell to defendant the right to said well or to take water therefrom," and not to consider any evidence "tending to show that plaintiff attempted to sell such right to defendant." The refusal to exclude the evidence and instruct the jury as above is submitted as reversible error by the fourth point. While we think the court might have withdrawn all of the testimony of Rees, Crispen, and Bur-

kett with reference to the spring and well, the water from neither of which seems to have been used by appellant in its drilling operations, yet the evidence complained of is in rebuttal and explanation of the statements of Rees and Crispen to the effect that while Burkett had pointed out a good place for a spring in the bed of the creek, they saw no spring or well. There is no evidence that it was necessary for appellee to resort to the use of water from either the spring or the well, or a lack of water on appellee's land, or that the water from the spring or well formed any part of the consideration for the written contract or the oral agreement, if there was one.

The evidence of Rees and Crispen, with reference to the spring and well, was not withdrawn, and we think it was not reversible error to refuse to withdraw the evidence of Burkett in reference and in reply to what they had said about the spring.

What we have said under a previous proposition expresses our views on proposition 5, insisting that an instructed verdict should have been given in favor of appellant on the several grounds mentioned. The point is not sustained.

Burkett had testified that in his conversation with Rees, in making the written contract for the first year, Rees stated that he only wanted to make a contract for one year at that time, but that he wanted the refusal of it for another year if they needed it. After some talk about it, Rees said:

"Unless they had the refusal of it for another year, if they desired, that they would not take the water for the first year, I agreed that they might have the refusal of it for another year."

[8] Counsel for Burkett asked him whether, after the written contract was made by Rees for the appellant, anything had come to his notice that in any way abridged Rees' authority as agent of appellant. Counsel for appellant objected on several grounds. The trial judge remarked: "It was all embodied in one contract and was to be exercised later," and overruled the objection. The sixth proposition complains of the above remark of the court in the presence and hearing of the jury as being a comment on the weight of the evidence. It is insisted by appellee that by the remark the court merely stated his understanding of the contention of the appellee, as made by his pleading, and had no reference to the evidence. We think the facts as pleaded by appellee and his evidence bear out that construction. If the appellant contracted for the refusal of the water for the second year, both under the pleading and proof it was at the very time, in connection with, and under the terms of, the written contract for the first year, and, as the judge remarked, all that remained to effect a complete contract would be an ac-

ceptance later. The remark was made to counsel on an objection to a question to the witness, and not to the jury, though in the presence and hearing of the jury. While we do not commend the remark as proper under our practice, we think reversible error is not made to appear.

[9] Proposition 7 is directed to the exclusion of certain evidence sought to be elicited from the witness Anderson, the general superintendent of appellant company, in Eastland county, as to the extent of the agency of Rees to make the contract for water. Anderson was permitted to testify that his company was needing water; that he and Mr. McCue, assistant general manager, told Rees to make a contract for a supply of water. Rees reported that he had secured a supply of water from Burkett out of a dam constructed across the Leon river, and stated the price paid. The witness and McCue told Rees it was satisfactory and to have a written contract executed. The witness never instructed Rees to make a verbal contract with Burkett for the second year for any sum. Witness would have such authority on recommendation from the district superintendent. The witness was not permitted to say whether or not he "ever gave Rees any general instruction to go out and make contracts for water generally, year in and year out and at all times." Witness would have said he did not. Witness was not permitted to state whether or not "Rees was authorized to make any such oral contract or verbal contract for this water for the second year for $5,000 without any instructions from you." The witness would have said he was not. It is clear that the exclusion of the answer to the first question was not error. Rees, having authority to make the written contract for the first year, apparently would have authority to say to Burkett that he would make the contract for the first year only on the condition that his principal should have a similar contract for the second year, and the company would be bound thereby, unless Burkett had notice of a limited authority of Rees to contract, or unless the circumstances were such as to put Burkett upon notice of Rees' limited power. Anderson's and McCue's instruction to Rees was, "Go out and get a supply of water." The evidence does not show that Rees' authority in securing water was limited to a written contract for the water, nor the length of time for which he was to secure the water, nor that he was limited to any terms or conditions upon which the water was to be secured, and the circumstances do not indicate a limited power as to time or condition. Rees testified that he did not say anything to Burkett about a limited authority to contract for the water. He simply denied that anything was said or done as to an option for water for another year. We think

the proposition does not show reversible error.

The record shows that the issues as to the authority of Rees' to represent the appellant in making the oral agreement for the use of the water were sufficiently submitted to the jury, and the court was not in error in refusing to give the special charge submitted by appellant, as complained of in the eighth proposition.

The court was not in error in refusing to give the special charge submitting the issue as to whether the Leon river was a water course where it ran through appellee's land, at the time of the alleged oral contract. The facts in the case do not, in our opinion, make the issue sought to be submitted a material issue in the case.

Appellant refers us to the case of Hoefs v. Short (Tex. Civ. App.) 190 S. W. 807. That suit was brought to obtain a division of the public water between water appropriators, the lower proprietor seeking to enjoin the upper proprietor from diverting a greater quantity of the storm water as it flows down the stream than he had acquired by his act of appropriation. It is clear that the question of the absolute ownership of underground water or water caught and impounded by the owner of land on his land as the water flowed upon or across his land was not the point at issue. In that case Mr. Justice Higgins, the writer of the opinion in that case, in the first conclusion states that:

"It is not diffused surface water falling upon or flowing across appellants' land which possibly may be regarded as their absolute property, and not subject to appropriation. Whether or not such water is subject to appropriation it is not necessary to decide, and we express no opinion upon that question."

The facts of that case and the contentions of the parties are lengthy, and we must content ourselves by referring to the case for the issues discussed.

[10] Proposition 10 complains that the court should have instructed the jury further, at the jury's request, on issue No. 2. We think the court was not in error in refusing to further instruct the jury, nor in refusing to give the special charge submitted. It certainly could not be reversible error to refuse a special charge instructing the jury that, in the event the jury could not agree on any issue submitted to them, they had a right to report such failure to agree to the court. We think issue No. 2 could, and probably should, have been completely eliminated, in view of issues Nos. 1 and 3. It is not alleged nor shown that $5,000 was paid for the option. If such had been the pleading or proof there could have been no cause of action. The consideration for the option, if any, was the agreement to extend the privilege of the water for the second year, should the company so desire and duly indicate such acceptance, and in the event only of an acceptance was any money to be paid. The consideration, if any, was a mutual promise for a promise, a valuable consideration, if concurrent in point of time.

We do not concur in appellant's contention that appellee does not allege a consideration.

Findings 1 and 3 are sufficient to sustain the judgment.

Finding no reversible error the case is affirmed.