**WUTKE et al. v. YOLTON et al.**
No. 2574.

Court of Civil Appeals of Texas. Beaumont.
May 17, 1934.

Rehearing Denied May 23, 1934.

Crook, Lefler & Cunningham, of Beaumont, for appellants.

Sonfield & Sonfield, of Beaumont, for appellees.

WALKER, Chief Justice.

On October 29, 1931, appellee, Mrs. Ada Cooke Yolton, was occupying and operating the Central Hotel in Port Arthur, Jefferson county, a tenant of appellants P. A. Wutke, W. J. Wutke, and Elma Wutke. This was a commodious hotel of more than 60 rooms, and Mrs. Yolton owned personally all the furniture and equipment in the hotel. The lease contract contained the following conditions: "That upon any violation of any of the covenants of this lease by Lessee, said Lessors may declare said lease forfeited at their discretion, or may enter upon, hold, occupy or repossess the entire premises herein leased, without prejudice to any legal remedies, which may be used for the collection of said rent, insurance premium and taxes, and all and every claim for damages for, or by reason of said re-entry, are hereby expressly waived." Though the lease contract thus gave appellants, as lessors, the right of re-entry on default in payment of the rent, no

provision of the lease waived the demand and notice required by law. On the date mentioned Mrs. Yolton was in default in her rent payments, and on that date appellants, in company with a deputy constable, took possession of the hotel and everything therein— the furniture, furnishings, and equipment; the unpaid accounts, which they collected, and the cash on hand, which they expended without appellees' knowledge or consent; the office supplies, letterheads, statements, guest pads, etc., which were used by them in the conduct of the hotel. From the date of their re-entry to the date of the trial appellants operated the hotel under the same name used by appellees. After using appellees' letterheads showing them to be the proprietors, appellants procured new letterheads, still calling it the Central Hotel, W. J. Wutke, proprietor. Appellees' furniture, furnishings, fixtures, and equipment in the hotel, used by them in the conduct of their business, were taken over by appellants and used by them as part of the hotel equipment.

This suit was instituted by appellants as owners of the Central Hotel and, as lessors against Mrs. Ada Cooke Yolton and her husband, J. M. Yolton, to recover past-due rent, rents to become due in the future, and certain other items of indebtedness, and to foreclose the landlord's lien upon the furniture, furnishings, and fixtures of the hotel, belonging to appellees. By their answer appellees alleged that, while they were in possession, occupying and using the leased premises for the purposes for which the lease was executed, appellants wrongfully and unlawfully, without demand or notice, evicted them from the leased premises, and re-entered same, and that appellants have been in continuous possession and use of the leased premises since the date of the eviction and re-entry; that by reason thereof all liability for future rentals under the lease terminated, and that they were liable only for rents for the month of September and to October 29, 1931, the date of the eviction and re-entry. They answered further that, if, by reason of their default, appellants were entitled to re-enter, they waived this right by their acts, conduct, and representations, in that, after knowledge of the default, they recognized the tenancy as still in force, and that the conduct of appellants estopped them from asserting the right of re-entry. By way of cross-action, they pleaded the conversion of the furniture, furnishings, fixtures, and equipment, which on the date of re-entry, and the date of conversion, was of the "reasonable value" of $25,000 as the same was situated in the hotel;

that the "reasonable value" of the use of the furniture, furnishings, fixtures, and equipment belonging to appellees and wrongfully converted by appellants to their own use was the sum of $500 per month; and that they were entitled to recover of and from appellants "the value of said personal property so wrongfully converted by them in the sum of $25,000.00, together with the value of its use from the date of its conversion to the date of the trial, at the rate of $500.00 per month."

The following questions were submitted to the jury, answered as indicated:

"Special Issue No. 1. From a preponderance of the evidence, what do you find was the actual value, if any in Port Arthur, Texas, on October the 29th 1931 of the furniture, furnishings, fixtures and equipment in question excluding the electric fans. Answer: $8,000.00.

"Special Issue No. 2. What do you find from a preponderance of the evidence was the reasonable value, if any, from October the 29th, 1931 to this date, of the use of the furniture, furnishings, fixtures and equipment for the purpose for which the same was being used by the defendants on October the 29th, 1931, excluding the electric fans? Answer: $5,000.00.

"Special Issue No. 3. From a preponderance of the evidence, what do you find was the reasonable market value, if any, in Port Arthur, Texas, on October the 29th, 1931 of the electric fans, in question? Answer: $700.00.

"Special Issue No. 4. From a preponderance of the evidence what sums of money, if any, do you find were expended by the defendants in the making of plumbing repairs in the leased premises? Answer: $2,200.00.

"Special Issue No. 5. Do you find from a preponderance of the evidence that plaintiffs with knowledge of default by the defendants in the payment of rents and of the rights of plaintiff to re-enter the leased premises on October the 25th 1931 continued after October the 25th 1931 to recognize the lease as in force and effect and to recognize defendants as tenants under the lease? Answer: Yes.

"Special Issue No. 6. Do you find from a preponderance of the evidence that plaintiffs were prompted by malice towards the defendants in taking possession of the property of the defendants on the leased premises and withholding the same from the defendants, if you have found that they did do so? Answer: Yes.

"Special Issue No. 7. What amount of exemplary damages, if any, do you find from a preponderance of the evidence the defendants are entitled to recover from the plaintiffs? Answer: None.

"Special Issue No. 8. What amount do you find, from the preponderance of the evidence, that the defendant Mrs. Yolton was indebted on October the 29th, 1931 for taxes, under her said lease? Answer: $262.53.

"Special Issue No. 9. What amount do you find from the preponderance of the evidence, that the defendant was indebted on October the 29th 1931 for insurance premiums, under her said lease? Answer: $40.00."

On the verdict of the jury and the undisputed evidence the court entered judgment in favor of appellees against appellants for the sum of $11,349.72, after allowing appellants credit for all sums of money due them by appellees. The appeal to this court has been duly prosecuted by all the plaintiffs below.

## Opinion.

The common law was that notice or demand was required before the landlord could lawfully re-enter. Gray v. Vogelsang (Tex. Civ. App.) 236 S. W. 122, Conn v. Southern Pine Lmbr. Co. (Tex. Civ. App.) 11 S.W. (2d) 199. Since, under all the evidence, appellants took possession of the hotel from appellees on October 29, 1931, without notice or demand, they could not recover rent after the date of their unlawful re-entry, but had the right to recover the rent due up to that date. They recovered all past-due rent but were denied recovery for future rent, and no complaint is before us against these terms of the judgment. Also, since the re-entry was unlawful, the seizure of appellees' property in the hotel was unlawful and in law constituted a conversion; so the court did not err in refusing to submit that issue to the jury. The evidence so clearly supports the answers of the jury to questions Nos. 1 and 2 that it would serve no useful purpose to review the facts on these issues.

We overrule the contention that appellees' petition in cross-action was bad on general demurrer. The point is made that appellees were required to plead affirmatively that their property had no "market value" before they could state a cause of action for "actual value." Appellees' proposition is denied by the following statement from 13 Tex. Jur. 413: "Under an allegation as to the reasonable value of property, it is held that in the absence of an exception thereto proof either of market value or of intrinsic value may be offered." See, also, Taylor County v. Olds (Tex. Civ. App.) 67 S.W.(2d) 1102; Black v. Nabarrette (Tex. Civ. App.) 281 S. W. 1087.

The proposition is also overruled that appellees' measure of damages was the cash market value of the converted property at the time and place of its conversion, and that it was error to submit question No. 1 on "actual value" and question No. 2 on "reasonable value." There was no evidence of an open market in the city of Port Arthur to which one could go and buy furniture of the same character and quantity, and in the same condition as was the furniture in issue. The evidence went no further than to show a market for secondhand furniture in Port Arthur; a secondhand dealer examined the furniture, made an inventory of it, and testified as to its value, about one-tenth of what it cost appellees. The evidence in this case, as in the usual litigation involving secondhand furniture, was to the effect that no two sets of secondhand furniture are found in the same condition. In Wells, Fargo Express Co. v. Williams (Tex. Civ. App.) 71 S. W. 314, 315, it was said that "no standard of market value exists" for secondhand furniture. On this issue, in Lincoln v. Packard, 25 Tex. Civ. App. 22, 60 S. W. 682, 683, the court said: "We do not think that proof which only establishes the fact that secondhand furniture of the kind involved in this suit was often sold in the city of Houston, by persons who desired to leave the city, or who were forced to sell, at from 10 per cent. to 60 per cent. of its original value, is sufficient to show the market value of such property; but the proof must show that there is an open market for such property in the city of Houston, into which the plaintiffs could go and buy property of like kind as that of which they have been deprived." Supporting the court's ruling in submitting the issue on "actual value," it was said in Galveston, H. & S. A. R. Co. v. Wallraven (Tex. Civ. App.) 160 S. W. 116, 117: "The rule is now well settled in Texas that the measure of damages for damage to secondhand household goods and wearing apparel is the difference in their actual value just prior to and just after the injury, and not the difference in the market value of similar goods at secondhand stores at or nearest their destination. And it seems that it is not necessary to allege or prove that such goods have no market value to predicate proof of actual value. Wells Fargo Exp. Co. v. Williams [Tex. Civ. App.] 71 S. W. 314; Benedict v. C., R. I. & P. Ry. Co. [Tex. Civ. App.] 91 S. W. 811; I. & G. N. Ry. Co. v.

Nicholson, 61 Tex. 550; Railway Co. v. Smythe, 55 Tex. Civ. App. 557, 119 S. W. 895. In such a case all such pertinent facts and circumstances as will place before the jury material data which will enable them to reach a fair valuation or estimate of the plaintiff's damage are admissible in evidence. The original cost in the market and the manner and time and place of its use, the appearance before and after the alleged injury, and the relative usefulness and physical condition may be offered in evidence to show the damage." The same rule was announced in Pittman v. Fort Worth W. & S. Co. (Tex. Civ. App.) 258 S. W. 1105; Tubbs v. American Transfer & Storage Co. (Tex. Civ. App.) 297 S. W. 670; Pecos & N. T. R. Co. v. Grundy (Tex. Civ. App.) 171 S. W. 318. Appellants do not deny the force of the authorities cited, but insist that the owner can recover the actual value of secondhand furniture only when it was used as a part of the equipment of his home; that where the furniture is used as part of hotel equipment a different rule governs its value. We cannot agree with them in this distinction. Because of the very nature of secondhand furniture, the principle of law governing its value when used in the home must govern its value anywhere and everywhere. Under the authorities cited, appellees were entitled to recover the "actual value" of their secondhand furniture at the time it was converted by appellants.

■ Since "market value" was not the proper measure of appellees' recovery, the court did not err in refusing to define that term in connection with issue No. 1. No exception was reserved to the charge on the ground that it did not submit definitions of the terms "actual value" and "reasonable value," as used in questions Nos. 1 and 2. On this statement it was not error, fundamental or otherwise, to omit such definitions from the charge. 13 Tex. Jur. 449; City of Brownsville v. Crixell (Tex. Civ. App.) 275 S. W. 430; Texas Co. v. Ramsower (Tex. Civ. App.) 255 S. W. 466; Id. (Com. App.) 7 S.W.(2d) 872. Such an objection is available only upon a proper exception to the court's charge. Texas Pipe Line Co. v. Bridges (Tex. Civ. App.) 39 S.W.(2d) 1109.

■ We overrule the contention that the court failed "to instruct the jury as to the proper measure of damages." As the case was submitted on special issues, no general charge could be given; the form of question No. 1 properly carried the issue to the jury, with the right on the part of appellants to have submitted a definition of "ac-

tual value," had such definition been requested. Also, there is no merit in the contention that the court erred in not giving the jury a standard of measure by which to determine the value of the use of the hotel furniture and fixtures. This issue was correctly submitted by question No. 2. There is no merit in the point that question No. 2 was error, "in that it did not instruct the jury as to whether they should consider the damages of plaintiffs in cross-action, based upon the loss of the use to them, or upon the value of the use to the cross defendants." The issue, both by the pleadings and the evidence, was "the damage of plaintiffs in cross-action based upon the loss of the use to them."

■ The court did not err in receiving evidence as to what appellees paid for the furniture "several years before the date of the conversion." This testimony was admissible on the issue of actual value. In Wells, Fargo Express Co. v. Williams, supra, the court said: "When goods of this character are destroyed, a proper method of arriving at their value at the time of loss is to take into consideration the cost of the articles, the extent of their use, whether worn or out of date, their condition at the time, etc., and for them to determine what they were fairly worth. The cost alone would not be the correct criterion for the present value, but it would be difficult to estimate the value of such goods, except by reference to the former price in connection with wear, depreciation, change of style, and present condition. See cases above cited." To the same effect the following cases: Galveston, H. & S. A. Ry. Co. v. Wallraven, supra; Pecons & N. T. Ry. Co. v. Grundy (Tex. Civ. App.) 171 S. W. 318; Pittman v. Fort Worth Warehouse & Storage Co. (Tex. Civ. App.) 258 S. W. 1105 (writ dismissed).

■ Appellee's witness Walker was qualified to testify as to the value of the converted property. He had examined the property, was a dealer in Port Arthur in both new and secondhand furniture, was acquainted with the market value of furniture generally, both new and secondhand, in Port Arthur on the 29th of October, 1931, and before testifying had inspected all the property in issue. On this statement of his qualifications this witness gave evidence as to actual value which clearly raised the issue submitted by questions 1 and 2.

It follows that the judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.