**Marvin M. FISHER, Jr., Individually and as Independent Executor of the Estate of Nola Fisher, deceased, Appellant,**

v.

**Charles L. WALKER, et al., Appellees.**

**No. 08–84–00146–CV.**

Court of Appeals of Texas,
El Paso.

Jan. 16, 1985.

Rehearing Denied Feb. 20, 1985.

Wm. Monroe Kerr, Kerr, Fitz-Gerald & Kerr, Midland, for appellant.

W.B. Browder, Jr., Stubbeman, McRae, Sealy, Laughlin & Browder, Inc., Midland, for appellees.

Before STEPHEN F. PRESLAR, C.J., and OSBORN and SCHULTE, JJ.

## OPINION

STEPHEN F. PRESLAR, Chief Justice.

This is a suit for declaratory judgment to determine the effect of the termination provisions in an oil and gas lease. The trial court entered judgment in favor of the lessees on the basis of stipulated facts. The court found that all obligations imposed upon lessees had been fully performed and that the lease remained in full force and effect as to the entire parcel of land covered by the lease. We reverse and remand for entry of judgment in favor of the lessor.

The dispute in this case revolves around an interpretation of a clause in an oil and gas lease entered into between Appellant, as lessor, and Charles L. Walker, et al., as lessees, on April 27, 1978. The agreement consisted of one document which set up ten separate leases, each controlling one-quarter section of land for a primary term of three years. With the exception of Paragraph 24 and Paragraph 25, the other terms of the lease agreement can be called standard in the industry. The dispute centers upon the interpretation of Paragraph 24, and involves Paragraphs 2 and 25.

24. Anything herein contained to the contrary notwithstanding, if this lease is not sooner terminated under other provisions hereof, from and after the expiration of the primary term, as the same may be extended under the provisions of Paragraph 2 hereof, this lease shall terminate insofar as it covers and pertains to all lands covered hereby and all geological formations in and underlying the lands covered hereby which are not contained in a producing proration unit that is specified and approved by the Railroad Commission of Texas, and from which geological formation and producing proration unit oil, gas, or other liquid hydrocarbons are being produced in commercial quantities, or with respect to which geological formation and producing proration unit there is a shut-in gas well, as defined and referred to in Paragraph 21 hereof, for which shut-in gas royalty payments have been made currently, if and as authorized in Paragraph 21 hereof.

2. Subject to the other provisions herein contained, this lease shall be for a term of three (3) years from date, (called primary term) and as long thereafter as oil, gas or other hydrocarbons or any of them are produced in commercial quantities from said land or from lands with which said land is properly pooled under the provisions of this lease.

25. The lands covered by this lease and described herein are a number of separate tracts, with each separate tract being designated as such. It is intended that this lease shall be considered as a separate lease for each separate tract. Anything contained herein to the contrary, or apparently to the contrary, notwithstanding, production, production from or drilling or other operations on and for the exclusive benefit of any one particular tract, shall serve to continue this lease in force beyond the primary term hereof, with respect only to such particular tract, and further, shall serve to continue this lease in force during the primary term hereof without payment of delay rental with respect only to such particular tract. Should this lease terminate as to less than all of the separate tracts, covered hereby, the rental shall thereafter be reduced in the proportion that the acreage covered hereby is reduced by such termination.

The parties stipulated that there was at least one well drilled on each of the ten tracts during the primary term. However, the Appellant argues that Paragraph 24 terminated the lease as to each proration unit which did not have a completed well within its confines. All oil wells were producing from the San Andres formation for which the Railroad Commission of Texas has provided forty-acre proration units. A single gas well is in a 160-acre RRC spacing in the Yates formation and is a part of land not in dispute. Since there are four proration units per tract there is a total of forty proration units covered by the lease. It was stipulated which proration units had producing wells, and they total seventeen in number. Thus, the Appellant contends that since there were only seventeen forty-acre proration units that had producing wells at the end of the primary term, the lease would terminate as to the remaining twenty-three non-producing proration units and all formations other than the San Andres and Yates.

Appellees urge that the lease remains in full force and effect as to the entire 1,600 acres since, as lessees, they have complied with all the terms of the lease agreement by drilling at least one well on each of the ten 160-acre tracts and all were still producing at the end of the three year primary term. In effect, Appellees focus on the literal language of Paragraph 24 which states that the Paragraph terminates the lease "from and after the expiration of the primary term, as the same may be extended under the provisions of Paragraph 2," and they argue that this provision restricts the termination provision of Paragraph 24 to the period of time after an *extended* primary term. Appellees urge that Paragraph 2 (the habendum clause) defines the "primary term" of their lease as not being merely the stated number of years given in this clause, but as also including the period of time which may be extended by production. Therefore, Appellees contend that since they are still operating in an *extended* primary term, Paragraph 24 has not yet become operable. They recognize that Paragraph 24 limits the duration of the leasehold estate but say that it has not been triggered.

■■■ The rules of construction here applicable are clearly stated in *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex.1983):

> When the provisions of a contract appear to conflict, they should be harmonized if possible to reflect the intentions of the parties. *Harris v. Rowe*, 593 S.W.2d 303 (Tex.1979). Generally, the parties to a contract intend every clause to have some effect and the Court will not strike down any portion of the contract unless there is an irreconcilable conflict. *Woods v. Sims*, 154 Tex. 59, 273 S.W.2d 617 (1954).

We cannot then ignore Paragraph 24—in effect strike it down—for the parties put it there with the intent that it have some effect. The law of contracts requires that the court examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex.

1983); *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517 (Tex. 1980). The construction urged by Appellees renders Paragraph 24 meaningless. The urged construction is that Paragraph 24 only applies after the primary term as the same may be extended by Paragraph 2, which paragraph provides that the "primary term" may be extended "as long thereafter as oil and gas are produced in commercial quantities." That construction means that the lease must terminate before Paragraph 24 becomes effective. The sense of Paragraph 24 then becomes that the lease would terminate for non-production on forty-acre proration units after it had already terminated. Such construction makes the paragraph meaningless and is in violation of a cardinal rule of construction. Paragraph 24 and Paragraph 2 are not in irreconcilable conflict and can be harmonized. Paragraph 24 modifies Paragraph 2 by further refinement as to the lands it applies to. Paragraph 2 says *"subject to the other provisions herein contained,* this lease shall be for a term of three years (called primary term) and as long thereafter ...." (Emphasis added). Paragraph 24 is one of the "other provisions." It modifies the lands held by production by specifying proration units. Additionally, the parties gave Paragraph 24 priority over any other provision, saying—"anything herein contained to the contrary notwithstanding ...."

The duration of the estate granted is traditionally determined by the habendum clause. 2 Summers, The Law of Oil and Gas, Perm.Ed. sec 303.1, p. 319. This need not be the case, for the instrument may provide elsewhere for the enlargement of the term stated in the habendum. See *Stanolind Oil & Gas Co. v. Christian*, 83 S.W.2d 408 (Tex.Civ. App.1935, writ ref'd); *Humphrys v. Skelly Oil Co.*, 83 F.2d 989 (5th Cir. 1936). *Gulf Oil Corporation v. Southland Royalty Company*, 496 S.W.2d 547 (Tex.1973). The construction problems in our lease arise from the fact that the parties put ten leases in one instrument with a further breakdown as to proration units and formations and yet using in some clauses the term "this lease." For instance, Paragraph 2 says "this lease" shall be for a term of years and then as long thereafter as production continues. However, by Paragraph 25 it is made clear that "this lease" is ten separate leases and that "as long thereafter" applies separately to each lease. That is the topic of Paragraph 25— that there are separate leases and they are independent of each other and production, drilling and other operations on one extend the lease "only" to that lease. Yet, Appellees say that it was the intent of the parties that Paragraph 25 modify Paragraph 2, the habendum clause; that "but for" Paragraph 25 one well would hold the entire 1,600 acres. Their contention then is that they have obtained production on each of the ten leases and that suffices as to all lands. We do not agree. Paragraph 25 does not say that. It contains no words of grant or anything affirmative fixing a term for those leases. As to duration of the lease, it does not alter the terms of Paragraph 2. It simply defines "the lease" as being, in fact, ten separate leases with the negative result that compliance with Paragraph 2 as to one does not enure to lessees' benefit as to the others. Paragraph 25 leaves unaffected the provisions of Paragraph 24. The Appellees have not complied with the provisions of Paragraph 24 and Appellant is entitled to terminate the lease in accord with that paragraph.

Appellees concede that Paragraph 24 limits duration, but their contention is that the paragraph has not been triggered. If we are correct in our contrary construction, then the stipulations of the parties meet the requirement that the lessor must bring the acts of the lessees strictly within the language of the restriction before termination will be decreed. This is the test prescribed in *Knight v. Chicago Corporation*, 144 Tex. 98, 188 S.W.2d 564, 566 (1945).

The judgment of the trial court is reversed and the cause is remanded to the

trial court for entry of a judgment not inconsistent with this opinion.